## Dorsey vs. Dorsey's Lessee.

1816.
JUNE.

Dorsey
vs
Dorsey

Error to *Anne-Arundel* County Court. Ejectment brought on the 8th of July 1805, for a tract of land called *Chew's Vineyard*. From the case stated it appears, that *Samuel Dorsey*, by the will of his father, was seized of an estate tail in the land in dispute, which is part of a tract called *Chew's Vineyard*. That being so seized, he, on the 25th of May 1777, entered into an agreement with Col. *John Dorsey* for the sale of it, and on that day gave his bond in the penalty of £3000, conditioned for the conveyance of the land to him, by metes and bounds. That *S. Dorsey* died in September 1777, not having conveyed according to his contract and bond. That before his death he had received from *J. Dorsey* the greatest part of the purchase money. That when *S. Dorsey* died, his son *Edward Hill Dorsey*, the lessor of the plaintiff, (the defendant in error,) was seven years old. That *J. Dorsey* on the 25th of January 1779, instituted a suit in chancery against *E. H. Dorsey*, the heir of *S. Dorsey*, and his mother *Margaret*, the administratrix on her husband's estate, to have a conveyance on payment of the arrearages of the purchase money. In which bill it is stated, and by the answer admitted, that such agreement was made and bond given. That on such bond being given, *J. Dorsey* entered upon and took possession of the property thus sold to him, with consent of *S. Dorsey*, the land being first surveyed for him, and found to contain 340 acres. That *J. Dorsey* had paid the greatest part of the purchase money in the lifetime of *S. Dorsey*. The case states further, that the chancellor decreed a conveyance of the land to be made to *J. Dorsey*. That *Margaret Dorsey*, in pursuance of said decree, on the 27th day of February 1779, executed to *J. Dorsey*, a conveyance according to the decree. That immediately thereon *J. Dorsey* entered into possession of the land, claiming the same under the said purchase, decree and deed. That on the 22d July 1779, *J. Dorsey*, for a valuable consideration, executed a deed for the same land to *Edward Dorsey*. That *Edward Dorsey* thereupon immediately entered into the said land, claiming the same by virtue of said deed, and that he continued in possession and seisin thereof till his death on the 24th March, 1799. That on his death the land descended to his children, *Mary Dorsey*, *Priscilla Dorsey*, *Caroline Dorsey*, *Hill Dorsey*, and *Hammond Dorsey*, and has since been in their possession. That *Robert Dorsey*, the defendant, (now plaintiff in error,) is the guardian of those heirs, and was in possession of the said land, as their guardian. That *E. H. Dorsey*, the lessor of the plaintiff, was, when this suit was instituted, *thirty-two* years of age, and had not at any time before, applied to the court of chancery, or to any court of common law, for relief. Upon these facts the county court, at September term, 1807, gave judgment for the plaintiff for possession and costs. It was agreed

A judgment in ejectment was entered for the plaintiff at September term 1807, with an agreement that execution should not issue thereon before the decision of the court of appeals in the case of D against P, and that if that judgment was reversed, then the above judgment was to be struck out. On this judgment the defendant brought a writ of error on the 3d of July 1811, and the judgment referred to was affirmed in the court of appeals at December term 1813——Held, that the writ of error be quashed, it having been sued out after three years had elapsed from the time of the rendition of the judgment.

S D, a tenant in tail of a tract of land, in May 1777 sold it to J D, and put him in possession, giving him a bond of conveyance. In September 1777 S D died, not having conveyed the land to J D. At the death of S D, his son E H D the heir in tail was seven years of age, and on the 8th of July 1805 he brought an action of ejectment to recover the land. J D and those claiming under him, had always, since May 1777, been in possession. Quere. Whether E H D, the issue intail, was not barred by the statute of limitations from recovering, as he did not enter or bring his ejectment either within 20 years after cause of action accrued, or 10 years after he arrived at the age of 21 years?

1816.

Dorsey
vs
Dorsey.

between the parties that execution should not issue upon this judgment before the determination of the court of appeals, in the case of *Dorsey's lessee against Partridge* (3 *Harr. & Johns.* 302,) and that if the judgment in that case was reversed, then this judgment should be struck out. On the judgment in this case, the defendant afterwards, on the 3d of July 1811, sued out a writ of error returnable to this court.

The cause was argued at the last term before BUCHANAN, NICHOLSON, and EARLE, J. and reargued at the present term before the same Judges, and MARTIN J.

*Martin*, for the Plaintiff in error, contended. That *E. H. Dorsey*, the lessor of the plaintiff below, was barred by limitation from recovering, as he did not enter or bring his ejectment either within twenty years after cause of action accrued, or ten years after he arrived to the age of twenty-one years. *S. Dorsey* on the 20th of May 1777, sold the land to *J. Dorsey*, and gave him a bond of conveyance, on that day he put *J. Dorsey* in possession according to the contract. When *J. Dorsey* thus entered and took possession under the contract, he became tenant at will of the whole land sold to him, according to its metes and bounds; and remained tenant at will thereof until *S. Dorsey's* death in 1777, and thus long his possession was legal, as tenant at will. On the death of *S. Dorsey* in September 1777, the tenancy at will ceased, and his possession afterwards became a tenancy at sufferance, and was tortious. At the death of *S. Dorsey*, therefore, the right of action accrued to his heir, the lessor of the plaintiff below. From that time *J. Dorsey* became tenant at sufferance; from that time he, and those claiming under him, remained in possession of all the land in dispute, occupying it, taking the profits of it, and claiming the same under the contract made with *S. Dorsey*; and *S Dorsey* or *E. H. Dorsey*, or any person claiming for them, have not entered upon the land, or had possession of it, or of any part of it, since the 20th of May, 1777, to the present time. Thus admitting, that no right either of entry or possession, was obtained by the decree or conveyance under it, yet the plaintiff in error, and those under whom he claims, have had possession of the whole land in dispute, claiming the same from the 20th of May, 1777, (the time of the contract, and date of the bond,) to this time. That possession was rightful until the death of *S. Dorsey*, in September 1777, and from that time tortious and adverse; and from that period to the institution of this suit, on the 8th of July 1805, is nearly thirty years.

*Pinkney*, for the Defendant in error. The counsel for the plaintiff in error, having abandoned all claim of title to the land in dispute, under the decree of the Chancellor, and the deed of *Margaret Dorsey*, guardian of the defendant in error, the sole question remaining for the conside-

ration of the court is, Whether upon the case stated, the lessor of the plaintiff in the court below, is barred by the statute of limitations? If cases similarly circumstanced, and already decided in the general court, and affirmed in the court of appeals, are to form a rule of decision in this case, it is contended that the question has been already finally settled. It will be admitted, that whatever bars the right of entry, is a bar to the plaintiff's recovering in the present action, to support which he must show a right of entry either in himself or his ancestors, within twenty years. This is the general principle laid down in the books. But it is contended in this case, that *J. Dorsey* did not, in virtue of his contracts, the decree of the chancellor, or the deed of the guardian, gain any right of property to, or right of entry into, the land in dispute. The contract of purchase with *S. Dorsey*, the father, could confer no such right against the heirs in tail; the decree could confer no right; the deed of the guardian could confer no such right, and so have the court decided in the case of *Dorsey and Partridge*, and so it is believed have the plaintiff in error's counsel admitted in the present case. If then *J. Dorsey* gained no right of entry by the acts above stated, *E. H. Dorsey*, who is admitted to have been in the seizin and possession of the land at the time of the execution of the deed by his guardian, was not divested either of his right of entry or right of possession. The question then occurs, "What kind of possession must a person have who claims by possession alone, without showing any title," which is the case now before the court? The answer is, that the person so claiming by possession alone, must show an exclusive adverse possession by enclosures, and his claim cannot extend beyond his enclosures. In this case, no possession by enclosures has been stated, none has been admitted, no plot or survey locating the enclosures, or identifying the actual possession of the defendant, appear upon the record, nothing more is stated than the mere entry of *J. Dorsey* into the land, claiming the same under the purchase, decree and indenture. These acts did not exclude the rightful owner of the advantages arising from his general possession, nor did they operate in any manner in derogation of his rights, or his remedy by action. The case of *Davidson's Lessee vs. Beatty*, 3 *Harr. & M·Hen.* 596, 597, 618, 619, 621, fully establish the doctrine contended for. In that case there was an attachment and condemnation of the land in dispute, in virtue of which the defendant, and those under whom he claimed, entered on the premises. The condemnation took place in 1768, the suit in 1794, and there was no minority or other inability, intervening, as savings under the statute of *James*. In the above case, it is true, there was a qualified possession gained, but not such a possession as would confer any legal right whatever; it was only the possession of an intruder, who to avail himself of that possession, must show an exclusive adverse possession by enclosures. Although the

1816.

Dorsey
vs
Dorsey

land in that case was surveyed and laid out into lots by the defendant, and sold to sundry purchasers, yet the court decided that such acts did not amount to that kind of possession, in contemplation of law, as would bar the legal owner. There was an appeal in the above case, but it was never finally decided in the court of appeals. But the general court in 1803, made the same decision in the case of *Ringgold et al. lessee against Cheney*, which was affirmed in this court on argument. 2 *Harr. & Johns.* 87. Ever since those decisions so solemnly adjudged, upon argument by the most eminent counsel in the state, the point has been held to be finally settled.

*Stephen*, on the same side. The judgment rendered in this case was at September term 1807, and the present writ of error was sued out on that judgment on the 3d of July 1811. The judgment rendered in this case was on the same facts stated, as in the case of *Dorsey's Lessee vs. Partridge;* from the decision in that case an appeal was made, and the judgment of this court, it was expected, would have terminated the present contest. 3 *Harr. & Johns.* 302. The plaintiff in error in this case now relies solely on the act of limitations, a ground not taken in the court below. For there it must instantly have been abandoned, upon proof that the lessor of the plaintiff held the adjacent lands, and that fact appearing, the judgment of this court, in the case of *Ringgold vs. Cheney*, must have removed the bar by limitations. The writ of error here has been improperly and illegally sued out, and on motion must be quashed. Before the act of 1807, twenty years was the time limited for appealing or suing out a writ of error, from the judgment of a court of law; but by an act passed in that year, (*ch.* 151,) the time is reduced to three years. The language of the act is most clear and explicit. It is this: "No writ of error or appeal shall be prosecuted on any judgment rendered, or that shall be rendered, after three years shall have elapsed from the time of the rendition of such judgment." The judgment here was rendered in September 1807. The writ of error was not sued out until the 3d of July 1811, nearly four years after the date of the judgment. The act of 1807, passed the 20th of January 1808, subsequent to the judgment, but it embraces past as well as future judgments; of course the writ of error now before the court must be quashed, as not prosecuted in time, unless it falls within the operation of the proviso of the act, and is protected by it. But it is as evident that the proviso does not embrace it, as it is clear that if it did, yet the writ of error must be quashed, because not prosecuted within the time limited by the proviso or saving clause. The act of assembly, having reduced the period from twenty to three years, and being retrospective as well as prospective in its operation, the legislature thought proper to allow a time to appeal or sue out writs of error from judgments rendered within twenty

years, but more than three years from the date of such judgments, and therefore provides for such cases as would have been barred by three years, and allows to them 18 months *to be computed from* the passage of the act. The case before the court is not within the proviso, for it is not one of those which would have been barred by the act, if the proviso had not been made. For only a few months had elapsed from the time of the rendition of the judgment, before the passage of the act. Perhaps it may be urged, that the proviso in its spirit, though not in its language, should embrace all judgments rendered prior to the passage of the act, otherwise this consequence might ensue, that judgments, having only a few months, nay days, to complete the three years, would be barred at the expiration of that time, a hardship which the legislature could never have intended. Such a course of reasoning is fair, and the interpretation might be adopted, as proceeding out of the spirit, though manifestly inconsistent with the explicit letter of the law. Even such a benign and liberal inter- pretation of the law would not, however, place the cause of the plaintiff in error in a better situation. All he can ask is, that either his case may or may not be brought with- in the operation of the proviso. If it is not, then clear- ly the enacting clause is against him; if it is, then as the proviso allows to no cases more than eighteen calendar months, to be computed from the passage of the act; and as more than three years have expired after the act, before the writ of error was brought, he is too late in bringing his case before this court, and of course, in every view of the subject, the decision must be to quash the writ of error. If the plaintiff in error should attempt to avail himself of the agreement entered into in the court below, at the time of the rendition of the judgment, which was that execution should not issue before the determination of this court in the case of *Dorsey's lessee vs. Partridge*, and the decision of this court in that case should be binding and decisive in this case, it is answered that this agreement is no bar to the bringing a writ of error immediately thereafter, if the defendant had been so disposed; and of course, it can- not have the effect of taking his case out of the regular operation of the law.

*Martin*, in reply. It has been said "that *J. Dorsey* did not, either by the *contracts*, the *decree*, or the *deed of the guardian*, gain any *right of entry* or right of *property* in the land in dispute." It is admitted for argument sake, that *neither the decree* of the chancellor, nor the *deed of the guardian*, gave him a right of entry or a right of property in the land. But there is no principle more clear, than that by *the contract*, *J. Dorsey* did obtain a *right of entry* into the whole lands contracted for; for *S. Dorsey* had a right to make that contract, which gave *J. Dorsey* a right to enter into the lands agreeably to the contract; and by that entry, *J. Dorsey* became a tenant at will. And he,

and those who claim under him, having continued that possession ever since, which though rightful while *S. Dorsey* lived, yet having been wrongful and adverse since his death, became at the end of twenty years after *S. Dorsey's* death, and ten years after the lessor of the plaintiff came of age, a bar to his recovery by ejectment, it being a bar to his entry. But it is idle to say "that neither the contracts, decree of the chancellor, nor deed of the guardian, gave a *right* of entry or property, if in *reality an actual entry was made upon them.*" For if there was not a *right of entry*, then the *actual entry* was *tortious* and *adverse*, which is sufficient for our purpose, as from that moment the cause of action accrued. And *it is admitted* that such actual entry was made by *J. Dorsey* into the lands in dispute, claiming the same under the contract, and also under the decree and deed. And unless the lessor of the plaintiff entered or brought his ejectment within 20 years after *J. Dorsey* had thus entered, or within 10 years after his arrival to the age of 21 years, he is barred by limitations. It has also been said, "that it is admitted *E. H. Dorsey* was in the seizin and possession of the land in dispute at the time the guardian executed the deed." There is no such admission, nor was it a fact; on the contrary, it appears from the case stated, that *J. Dorsey*, and those claiming under him, was in possession, and have continued in possession, from the day the bond was given, until the day the case was stated, without any interruption. Nor can there be even an inference from the guardian's executing the deed, that the lessor of the plaintiff, or his guardian, was in possession at the time of executing the deed. For the deed could only operate as a release, the proceedings stating *J. Dorsey* to be in *possession under the contract.* The deed requisite to be given could only be a deed operating as a deed of release or confirmation—a deed to a person for land in his possession, to confirm and make good his title by transferring the right of property to him who had the possession. The counsel, it is presumed, has been led into this mistake by observing the admission that *Edward Dorsey,* (not *Edward Hill Dorsey,*) to whom *J. Dorsey* conveyed, was *seized and possessed,* under the conveyance made to him by *J. Dorsey.* It has also been observed, "if cases similarly circumstanced, and already decided in the general court, and affirmed in the court of appeals, are to form a rule of decision in this case, it will be contended that the question has been already finally settled." No decision either in the general court or court of appeals, can be shown, that militates against the principle contended for on the part of the plaintiff in error. Let us examine the two cases to which the court has been referred.

The first is *Davidson's lessee vs. Beatty.* In this case the *defendant* endeavoured to make *title,* for which purpose he showed that the land in dispute had been attached and condemned at the suit of *William Black,* and that under the condemnation *Black* had conveyed the land con-

demned, to *Beatty*, but the court determined that these facts proved no title in the defendant, for that by the attachment and condemnation, *Black* gained neither right of property, nor right of entry or possession. The defendant, thus failing to defend himself by title, endeavoured to set up a defence under the statute of *James*, by limitations; and for this purpose he gave in evidence, that under the attachment and condemnation, and the conveyance under the condemnation, from *Black* to *Beatty*, *Beatty* had entered into the land in dispute, had made a survey of it, had the the same laid off as a town into lots with streets, lanes and alleys, and had done this more than 20 years before. *To get clear of the effect of this possession, the plaintiff gave in evidence,* that at the time of the attachment and condemnation, and of the execution of the deed, as also of the entry made by *Beatty* into the land in dispute, and of the laying the same off into lots, streets, lanes and alleys, &c. the owner of the land, Mr. *Gordon*, was actually residing on it, and continued to reside thereon, claiming the same as his own, and contended, that as he was in actual possession, though *Beatty* had also actual possession, yet the possession should be considered as remaining in him who had the right to the extent of his right, and that he could not be prejudiced by the possession of *Beatty*, except so far as *Beatty* could show an exclusive unmixed possession of any part separated by enclosures from the possession of *Gordon*, who had the title and right. The opinion of the court was, that the owner of the property in dispute, *being actually in possession, residing thereon, claiming title thereto,* he could not be prejudiced by the possession of *Beatty*, or those claiming under him, unless for such part as he had held by actual enclosure, separated from the rest. To this opinion there was no exception taken, as appears by examining the papers in the cause and the records, nor was there any appeal on the part of *Beatty;* therefore the court of appeals did not in that case decide upon the opinion. This observation is not made to lessen the authority of that opinion, for its correctness is acknowledged in the fullest manner. But it in no respect operates to the prejudice of the plaintiff in error. The case of *Ringgold* and others lessee, against *Cheney*, was an ejectment for a tract of land called *The Number of Two.* Here, as in the case of *Davidson's lessee vs. Beatty*, the defendant, *Cheney*, having shown that he and his father had actually entered into *Cheney's Delight*, (for which he took defence) and claimed the same according to the lines of that survey, the plaintiff, to get clear of the effect of such entry and possession of the defendant, gave in evidence, that *Jordan* obtained a patent for *The Number of Two*, which included *Cheney's Delight*, and derived a title to the same down to the lessors of the plaintiff, showing also the entry and possession of the patentee himself, and of the entry of all those claiming under him, into *The Number of Two*, and their possession of part of *The Number of Two*, with a constant claim of the whole tract, according to their rights

respectively; thereby reducing the defendant to show that he had held by actual enclosures, separating the part he held from the rest of the tract, a kind of possession absolutely necessary to bar the plaintiff, who had actual possession of part, claiming title to the whole. According to the rule of law laid down in *Coke Littleton*, section 701, page 368, *a*, "Where A is seized of a *Mese*, and F, who hath no right to enter, entereth into the said *Mese*, claiming the same to hold to him and his heirs, but the said A is then *continually abiding* in the said *Mese*, in this case the possession of the freehold shall be always adjudged to A, and not to F, because in such case, *where two be in one house or other tenements*, and the one claimeth by one title, and the other by another title, *the law shall adjudge him in possession who hath the right to have the possession of the same tenements*." But suppose in *Davidson's lessee vs. Beatty*, no evidence had been given that *Gordon* had been residing on, or in actual possession of the land in dispute, at the time when *Beatty* entered under the deed, or at any time after, before bringing his suit. Or, in *Ringgold's* lessee *vs. Cheney*, the evidence had only been given that *The Number of Two* had been granted to *Jordan*, and included within its limits *Cheney's Delight*, without offering any proof that either *Jordan*, or any of those who claimed under him, had ever entered upon *The Number of Two*, or had ever been in possession of it after *Cheney's* certificate, and the entry and possession under it. In each case the defendants must have defeated the plaintiffs, without giving any evidence of possession by actual enclosures, as in that case there would have been no evidence of a mixed possession; and it is where there is a mixed possession, where the same thing is actually possessed by two persons, one possessing rightfully, and the other tortiously, that a possession by actual enclosures, separating the part tortiously possessed from the other part, is necessary. It will now be shown that adverse possession alone is sufficient, if the person who has the right of possession doth not enter within twenty years.

1. If tenant in tail conveys in fee, and the grantee enters into possession of the premises granted, he is legally possessed of the tenements granted, and to every part thereof as described in the grant, until the death of the grantee. Upon his death the heir in tail has immediately the right of possession, but he has no actual possession until he enters into the land conveyed by his ancestor. And if the grantee continues in possession after the death of the grantor, his possession is tortious; and if it continues 20 years undisturbed, the heir in tail, not having made an actual entry upon him, such heir cannot recover the land by ejectment. 3 *Blk. Com.* 171, 172, 174, 175.

2. If tenant in fee simple executes a lease of the lands to A for the life of B, and A enters into the land, he becomes legally possessed of it, and of every part of it, according to the description in the lease, as long as B lives,

1816.

Dorsey
vs
Dorsey

but if he continues in possession after B's death, his possession becomes tortious, and if the lessor doth not enter upon him within 20 years after the death of B, he cannot recover by ejectment. 3 *Blk. Com.* 169, 174, 175.

3. So if a man possessed of a tract of land in fee simple, leases the same for life, and the lessee enters upon the land leased, he thereby becomes legally possessed of the land leased, and of every part of it, to its utmost extent; and his possession, or the possession of any one claiming under him, is lawful during the lessee's life; but if on his death the heir at law of the lessee, or even a stranger, being in possession of the property leased, continues in possession, that possession is tortious, and if continued more than 20 years, without an actual entry being made by the lessor, an action of ejectment cannot be supported. 3 *Blk. Com.* 169, 174, 175.

4. In like manner, if a man has a lease for a year, and after the year is expired he continues to hold the premises without any fresh lease from the owner of the estate, or if a person is tenant at will, and the lessor dies, by which the estate at will is determined, but the tenant at will continues possession; in either case the tenant becomes a tenant by sufferance, and his possession is in such case tortious; this estate can be defeated by actual entry, but unless such entry is made within 20 years, the owner cannot recover by ejectment. 2 *Blk. Com.* 150. *Co. Lit.* 57 b. 3 *Blk. Com.* 174, 175. If a man is entitled to a tract of land, for instance *Black Acre*, and dies seized thereof, his heir at law not being resident thereon, though he has the right of possession, he is not considered in possession until he actually enters thereon; and if after the death of the ancestor, and before the entry of the heir, a stranger enters upon *Black Acre*, claiming title to that tract, he thereby obtains possession of it, which though tortious, yet if the heir doth not make an actual entry upon it within 20 years thereafter, prevents the heir recovering by ejectment, and such tortious tenant is called a tenant by abatement. 3 *Blk. Com.* 167, 168, 174, 175. Nay, where a person enters under a conveyance claiming title, though the conveyance is void, and gives neither right of entry nor possession, yet if the person doth actually enter under such conveyance, claiming title, and continues that possession for 20 years undisturbed, he can bar the recovery in ejectment by his possession. As for instance, if alienee enters claiming title under the conveyance, though his entry and possession is tortious, yet if the owner of the land doth not enter within 20 years after the tortious entry, or within ten years after the disability removed, he cannot recover in ejectment. 3 *Blk. Com.* 173, 174, 175. In all the cases above stated, it appears from 2 *Blk. Com.* 150, 151, and 3 *Blk. Com.* 167 to 174, inclusive, all persons thus holding after their rightful possession terminates, or entering illegally, while the possession is vacant, as after the death of the ancestor before the heir actually enters—or in case of

1816.

Dorsey
vs
Dorsey

death of tenant for life, &c. before heir in remainder or re-version actually enters, are possessors of the property by wrong. And though this wrongful possession may be defeated by a formal and peaceable entry made actually by the right owner of the land. 3 *Blk. Com.* 174, 175. Which entry, by the by, may be made where the conveyance has proceeded from the tenant in tail, according to the decisions in *Maryland,* and also in those cases of injury called *deforcements,* as well as in other cases; yet that remedy must be made use of within 20 years after the cause of action accrued, that is within 20 years after the tortious possession began. And in all cases where a tenant has been in possession rightfully of any tract of land, by metes and bounds, and continues his possession after his rightful possession is ended, his tortious possession is considered as extending to the same tract by the same metes and bounds, and so it has been determined in this state; for where the heir in tail has brought suits against tenants to whom his ancestor has sold property which was entailed, and he hath not brought his suit within 20 years against the tenant, he has been barred from recovering any part of the property sold within its metes and bounds, no matter whether the tenant held the land by actual enclosure, or without. So also if the ancestor dies seized of *Black Acre,* and before the heir enters thereon, so that he is not in possession thereof, or any part, and the possession is vacant to its whole extent, if a stranger enters into *Black Acre,* claiming that tract of land, he becomes wrongfully possessed, not merely of the spot on which he stands, but of the whole tract, no matter whether inclosed or uninclosed, and if he remains in possession more than 20 years, the owner cannot recover, whether such stranger be possessed by actual enclosure or not, *and in all other cases,* where a stranger enters upon any other tract, where the possession is vacant, or if the possession is not vacant, where the stranger expels the owner from the entire possession of the whole tract, and afterwards continues in possession thereof, claiming the said tract. A man may have a right to convey or to devise lands without having actual possession, but he must actually enter before he can bring trespass for injuries done to such lands. *Plowden,* 142. 6 *Bacon's Ab.* 566. 2 *Esp. Dig.* 290, (8.) He must have the *possession in fact* to bring trespass. 6 *Bacon's Ab.* 566. If lessee holds over his term, the owner must actually enter before he can bring trespass. 5 *Mod.* 384. And the entry must be *animo clamandi.* 6 *Mod.* 44. The only difference between trespass and ejectment, is that to bring ejectment, the entry laid in the declaration is sufficient, without actual entry, it being confessed; provided the plaintiff had a right to make an actual entry, that is to say, if the tortious possession had not continued for 20 years. Now to apply these observations to the case before the court. J. *Dorsey* entered into the land in dispute under the contract, and was actually possessed of it—He and those claiming under him have actually possessed, claimed, occupied and en-

joyed the land ever since. The possession was rightful until *S. Dorsey* died in September 1777. From that time the possession became tortious, and the cause of action commenced; from that time, to the commencement of this action, was 28 years. It is not found that *S. Dorsey*, or the lessor of the plaintiff, or any person on his behalf, has ever entered upon or been in actual possession of the land at any time since the death of *S. Dorsey*, nor have they been in fact. There is no *mixed possession* admitted, nor has there been any *mixed possession* in truth. According to the authorities cited, *J. Dorsey*, immediately upon the death of *S. Dorsey*, became a tenant at sufferance. On the 25th of July 1779, he conveyed the land in dispute, by the same metes and bounds, to *Edward Dorsey*, and it is admitted, "that immediately after, *Edward Dorsey entered into the said lands, claiming the same under and by virtue of that indenture, and continued in the seisin and possession of the same till his death;* and that from that time the land in dispute had been in possession of his heirs, to whom *Robert Dorsey* is guardian." Now the deed executed by *J. Dorsey*, (who was then tenant by sufferance,) to *Edward Dorsey*, and *Edward's* entry and possession and seisin under it, amounted to a disseisin. And even counting from the deed to *Edward Dorsey*, more than twenty-six years had elapsed before the lessor of the plaintiff brought his suit. Thus at law he is barred by limitation, not having brought the action within 20 years after cause accrued, or within 10 years after he was free from all disabilities. In 2 *Blk. Com* 195 to 199, it is stated, that one person may have the actual possession without right, which he calls a mere *naked possession*. Another may have the *right of possession*; another may have the *right of property*. But a complete title to lands comprises the right of possession, with the right of property, to which *the actual possession must be united*. Upon the death of *S. Dorsey*, *J. Dorsey* had, what is called, a *naked possession*, which, though the rightful owner may put an end to by entry, yet, till such entry is made, is *prima facie evidence of a legal title*; and which by length of time, and negligence of him who had right, may become a perfect and indefeasible title. *Ibid* 195, 196. And which, by the neglect of the entry of the lessor of the plaintiff within 20 years from the time *J. Dorsey* acquired that naked possession, or 10 years after he came of age, took away from the lessor of the plaintiff *the right of possession*, and the remedy by ejectment. And by a still longer neglect of 60 years, it would have barred a *writ of right*, and given him a perfect and indefeasible title.

It has been alleged in argument by one of the counsel, "that the plaintiff in error relies in this court on the act of limitations, a ground not taken in the court below, for there it must instantly have been abandoned, upon proof that the lessor of the plaintiff held the adjacent lands; and that fact appearing, the judgment of this court, in the case

1816.

Dorsey
vs.
Dorsey.

of *Ringgold against Cheney*, must have removed the bar by limitations." It may be answered. that the objection could not have been removed in the manner the counsel presumes it might. He is totally mistaken in the fact. It is well known that *S. Dorsey* was not, at the time of his death, possessed of one foot of land adjacent to the lands in dispute, nor did the lessor of the plaintiff, or any person holding for him, possess one foot of land adjacent to these lands at the time of his father's death, or at any time after and before the bringing this suit.

But the counsel for the defendant in error hath taken a new ground. He insists that the court cannot go into an investigation of the merits, because the writ of error was not sued out in time; that the plaintiff in error is barred of relief, if otherwise entitled, by limitation; and he relies on the act of 1807, *ch.* 151. It is believed, however, that the plaintiff in error cannot be affected by that act. 1. Because, when the judgment was entered, it was expressly upon the terms that no execution should be issued before the decision in the case then depending in this court between *Dorsey vs. Partridge*, and if that judgment be reversed, *this judgment was to be struck out.* Until that decision, therefore, this judgment could only be considered *interlocutory*—it did not become, nor could it be considered, a final judgment, until the decision in the case of *Dorsey vs. Partridge.* . If that decision had been against *Dorsey*, then it would have settled this case, because *Dorsey*, the present lessor of the plaintiff, had no other title here than he had there. But if decided in *Dorsey's* favour, it did not, nor was it meant, that though the judgment was to become final, the plaintiff in error in this case was not to have a right to appeal or sue out writ of error, because he might have, as is the case, a defence which *Partridge* had not. 2. Because every writ of error is a suit or action, and the defendant cannot, in any action or suit in law or equity, take advantage of limitations, unless he pleads it in time. In the case of the present writ of error, the defendant in error has pleaded the general issue, on which issue is joined. Whether there is error or not is therefore the sole issue before this court. If then the defendant in error could have had any benefit of limitations, he has lost such benefit by having omitted to plead that defence specially. .

The court will not quash a writ of error on motion, though it appears to be brought *twenty-nine* years after the judgment, and the statute restrains the party to *twenty* years, because if they did, it would deprive the plaintiff in error of the benefit of replying the exceptions in the statute. *Higgs vs. Evans*, 2 *Stra.* 857. *Sellon's Pr.* 406. *Tidd's Pr.* 1065.

THE COURT quashed the writ of error, it having been sued out after three years had elapsed from the time of the rendition of the judgment.

*WRIT OF ERROR QUASHED.*