KENYON, ᴇᴛ ᴀʟ. *v.* BOARD OF ZONING APPEALS
OF HARFORD COUNTY, ᴇᴛ ᴀʟ.

[No. 378, September Term, 1963.]

*Decided July 2, 1964.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY, JJ., and ANDERSON, J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Samuel E. Proctor, Jr.,* for the appellants.

*T. Carroll Brown* and *Franklin Somes Tyng,* with whom was *A. Freeborn Brown* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

This appeal is by neighboring residential property owners from an order of the Circuit Court for Harford County affirming the action of the Board of Zoning Appeals of Harford County which authorized David C. Galbreath, an appellee here and intervenor below, to enlarge his non-conforming business use in the town of Cardiff. The Board took no part in the appeal.

Cardiff is situated at the northern boundary of Harford County. Just on the other side of the Mason-Dixon Line is the borough of Delta, Pennsylvania. The two primary streets in Cardiff and Delta are Main and Chestnut which are parallel and run in a northeasterly-southwesterly direction. One of the streets intersecting them, and the last such connecting street on the Maryland side of the state boundary, is Church Street. On this street between Main and Chestnut Streets lie the properties of the parties to this dispute.

On the northeast side of Church Street from Main toward Chestnut are a gasoline service station, the farm machinery business of appellee Galbreath, which he sought to have enlarged, a fifteen foot paper alley, and the residence of Elizabeth W. Kenyon, one of the appellants, which actually fronts on Chestnut Street. On the opposite side of Church Street are the residences of the appellants Heaps and Kilburn, and the Slate Ridge Presbyterian Church which fronts on Chestnut Street.

Galbreath has outgrown his present business facilities, and the result has been an overflow of farm machinery and equipment, both new and used, so that Church Street has been uti-

lized as a storage or parking area. Likewise, storage of equipment has extended into the side yard adjoining Mrs. Kenyon's multi-family residence property, zoned "R-3." Upon the complaint of appellant Heaps, J. Lee Hanlon, Executive Secretary of the Planning and Zoning Commission of Harford County inspected the Galbreath property on May 31, 1962, and as a result mailed a letter to Galbreath dated June 12, 1962, the legal effect of which is in dispute. In the letter, Mr. Hanlon explained to Mr. Galbreath that he had a non-conforming use, that the zoning law did not permit enlargement or extension of the use unless certain conditions had been met, and then set forth those things which in Hanlon's opinion were violations of the zoning ordinance for Harford County, effective December 5, 1957. He then stated:

"You may have different viewpoints on the matter or feel aggrieved by the contents of this letter, therefore within 20 days from the date of this letter, you may appeal to the Zoning Board of Appeals for its consideration, upon contacting this office for procedure. Otherwise, it will be assumed that the use of the property to the extent as set forth in items 1, 2, and 4, will be discontinued."

After receiving the letter and later a telephone call from Hanlon, Galbreath went to the former's office to discuss the matter, in addition to which, they discussed an enlargement of the present building. However nothing more was done until about nine months later. On March 19, 1963, Hanlon re-inspected the property.[1] The following day Galbreath appealed and also applied for a zoning and building permit to construct an addition to the existing building, which was to be thirty feet wide and fifty feet long. With the application he submitted a drawing which he had prepared on his own stationery with some assistance of a boy scout compass. It was not based upon a survey as required by Article 19, Section 19.3 of the ordinance.

---

1. At the bottom of page one of the two page letter was a pencilled notation that the property had been re-inspected on March 19, 1963, and an appeal entered as a result on March 20, 1963.

A hearing before the Board of Zoning Appeals followed. Appellant's motion to dismiss the appeal as untimely was overruled, and the Board heard from the protestants and Galbreath, who represented himself. The protestants testified that their complaints centered around the accumulation of junk, noise of hammering late into the night on several occasions, the presence of machinery such as used and dirty manure spreaders on Church Street, and the traffic congestion resulting from parking vehicles and implements on the street. Most of Galbreath's testimony centered around the addition to the building he was proposing. After reviewing the evidence the Board rendered a decision on May 3, 1963, in which it granted a variance subject to four specific conditions and ordered the issuance of a certificate for the construction of the addition thirty feet by fifty feet. The present appellants appealed to the circuit court. On motion Galbreath was permitted to intervene although appellants had filed a motion ne recipiatur or to strike all of Galbreath's pleadings, which was overruled. The court heard argument by counsel for both sides on the record which was put into evidence, and without taking additional testimony the court affirmed the action of the Board by an order dated October 1, 1963.

In an opinion supporting its order affirming the Board the court took the view that the proposed enlargement was the result of an intensification of a non-conforming use and not an illegal extension and therefore permissible, citing *Nyburg v. Solmson,* 205 Md. 150, 106 A. 2d 483. Likewise the court upheld the Board's ruling that the appeal was timely, and also determined that it was proper for the Board to waive the provisions of Article 19, Section 19.3 requiring the plans to be based upon survey. Finally, the court found that the Board had acted within its discretion in granting the variance, and finding the issue fairly debatable, the court stated it would not substitute its judgment for the Board's.

Appellants first contend that the appeal by Galbreath was taken too late and thus the Board had no jurisdiction to hear it or the application for the building permit and zoning certificate. We agree with their contention as to the appeal, but not

as to the application. Galbreath takes the position that the letter of June 12, 1962, did not constitute sufficient notice of violation of the zoning ordinance from which an appeal within twenty days is mandatory by the terms of Article 20, Section 20.32 of the ordinance. He stated that his practice of storing equipment in his front and side yards and his use of Church Street for parking and storing was a valid non-conforming use and therefore he disregarded the letter. The letter was quite clear that if he disagreed with the results of Hanlon's first inspection, Galbreath could appeal to the Zoning Board of Appeals "within 20 days from the date of this letter." Numerous decisions of this Court have made it clear that the courts have no power or discretion to allow an appeal not filed within the prescribed time in the face of statutory language requiring an appeal be taken within a specified time. *Bushey v. State Roads Comm.*, 231 Md. 154, 189 A. 2d 98, is but one of a line of cases reaching as far back as *Dorsey v. Dorsey's Lesee*, 4 H. & J. 215, so holding. Whatever the reason for the "re-inspection" the following March, that could have no effect upon the appeal from the violation found by the zoning inspector to exist in May 1962. Apparently there has been no action taken to require Galbreath to discontinue the practices the inspector found to be in violation of the ordinance. This may have been on the supposition that the variance and its conditions would settle the matter.

We do not agree with appellants, however, that Galbreath's application for a building permit could not have been filed on March 20, 1963, and considered by the Board independent of the appeal. No such limiting language is to be found in the ordinance. The zoning inspector disapproved the application for a building permit because he determined the resulting addition would be in violation of Article 13, Section 13.017. While the building would be a permitted use otherwise, he considered it violated that section because contrary to the language therein, the addition would extend to within one hundred feet of an "R" (residential) district. We think appellee Galbreath was within his rights in promptly appealing to the Board of Zoning Appeals the decision of the inspector denying his application.

Aside from the jurisdictional consideration, however, the appellants further argue that the decision reached by the Board of Zoning Appeals was arbitrary and illegal. With this we agree. Article 20, Section 20.462 authorizes the Board to issue a zoning certificate for an extension of a non-conforming use provided the floor area of the addition does not exceed thirty-five per cent of the existing floor area. A further limitation is that the extension must be undertaken within five years from the date the use became non-conforming, which in this instance was the effective date of the zoning ordinance, December 5, 1957.[2] The application filed March 20, 1963, was for an extension thirty feet by fifty feet. It is undisputed that the floor area of the new part would be about sixty-two per cent of the existing area. Both limitations thus preclude the Board from authorizing the issuance of a permit and certificate under this article of the ordinance.

There is a separate section (Section 20.47) which authorizes the Board to grant variances, and upon which the appellee relies. However, we think the Board exceeded its power in authorizing the variance, even though it attached to the variance four conditions which it thought would bring the addition within the standards which are set, found in Section 20.42 of the zoning ordinance, so that it would not adversely affect the public health, safety and welfare. The various powers of the Board enumerated in the ordinance must be read together, and we do not think the Board could do under the variance provision what it manifestly could not do under the non-conforming use section (Section 20.462 previously dealt with).

Appellee Galbreath has argued that the appellants should be permitted to raise only the issue of whether the appeal was

---

2. On this date along with the ordinance a Land Use Map and a Master Zoning Map were adopted pursuant to Code (1957), Art. 66 B. The farm implement business was located in a "B-3" (General Business) district and would have been a permitted use except that it was less than 100 feet from residential property and thus violated Sec. 13.017. However, it was considered a valid non-conforming use under Sec. 6.02, which authorized the continuance of non-conforming businesses existing at the time the ordinance was adopted.

timely. We do not agree. The petition for appeal filed in the circuit court contended that the Board's decision was illegal, arbitrary and against the evidence presented at the hearing, in addition to specifically challenging the timeliness of Galbreath's appeal from the zoning inspection of his property. We think it was sufficiently broad to preserve the questions raised by appellants on this appeal.

The action of the Board of Zoning Appeals in granting the variance was beyond its power, but even if it had acted within the powers conferred by the ordinance there was no supporting evidence upon which to base a rational judgment. *Offutt v. Bd. of Zoning Appeals,* 204 Md. 551, 562, 105 A. 2d 219. *Cf. Mayor and Council v. Cotler,* 230 Md. 335, 340, 187 A. 2d 94. We therefore hold that the order of the court below affirming the order of the Board must be reversed because the action of the Board was in a legal sense arbitrary and capricious.

> *Order reversed. Costs to be paid by the appellee David C. Galbreath.*