ST. CLAIR, ET AL. *v.* COLONIAL PIPELINE
COMPANY, ET AL.

[No. 422, September Term, 1963.]

*Decided July 9, 1964.*

*Motion for rehearing filed August 6, 1964, denied September 16, 1964, and opinion modified.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT and HORNEY, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*T. Carroll Brown* and *Franklin Somes Tyng*, with whom was *A. Freeborn Brown* on the brief, for the appellants.

*William S. James*, with whom were *McComas and James*, on the brief, and *Theodore C. Waters, Jr.*, with whom were *Miles and Stockbridge* and *Jack Vickrey* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

In this zoning case, the primary question is whether the "delivery" or "tank farm" facilities of a pipeline company for the above ground storage of petroleum products constitute such "public utility structures" as are permissible in an agricultural district under the zoning ordinance of Harford County. C. Albert St. Clair and others (protestants) are the appellants and the Colonial Pipeline Company (Colonial or pipeline company) is the appellee.

Colonial, a Delaware corporation owned by nine oil com-

panies, is engaged in transporting refined petroleum products by pipeline, which, when completed, will extend from Houston, Texas, to Linden, New Jersey. The main line crosses twelve states, of which Maryland is one. Lateral or spur lines to service communities along the route of the pipeline system will connect with the main line at various intervals. There are two such connecting points in Maryland. One at Finksburg to service the Curtis Bay area, and the proposed one on the Berry farm near Forest Hill to service a lateral line terminating in the North Baltimore area.

The protestants are property owners who adjoin or are in close proximity to the proposed location of the tank farm or delivery facilities which are the subject of this controversy. Most of the protestants own attractive homes, costing in excess of $30,000, in what has been developing from a sparsely populated agricultural area into spacious residential homesites.

When the pipeline company made application for a zoning certificate to construct the delivery facilities in the center of the 300 acre Berry farm on which it has an option to buy, the zoning inspector disapproved the application and referred it to the board of appeals. On referral to it, the board, in the exercise of its original jurisdiction, ordered the issuance of the zoning certificate applied for subject to certain conditional uses, and the protestants appealed to the circuit court. The appeal to this Court is from the order of the lower court affirming the decision of the board of appeals.

The pipeline company proposes to erect five floating roof petroleum storage tanks, with a combined capacity of 382,000 barrels, as well as a thirty by sixty foot pumping station and smaller buildings. The proposed tanks average fifty feet in height with diameters ranging from eighty to one hundred and fifty feet, and, since the tanks will be lighted as a safety measure, they will be visible from adjoining properties both day and night. Such tank farm or delivery facilities constitute an integral part of the pipeline system and are required at "break-out" points or "take-off" stations. Their purpose is to slow down the movement of petroleum products in the larger main line so that they can be transferred or routed into a smaller lateral line. In negotiating the purchase of the farm for a take-off station provided rezoning or a certificate for conditional use was

granted, it is not disclosed whether or not the pipeline company considered the possibility that the erection thereon of the requisite facilities might violate the provisions of the county zoning ordinance. Rather, the record shows that only the practicality of the location, the availability of the property, the hydraulics of the pipeline system and the economics in operating from that particular point were given consideration.

The protestants, besides contending that the tank farm or delivery facilities are not such "public utility structures" as are conditionally permissible in an agricultural district, further contend, among other things, that the pipeline company is neither a common carrier nor a public utility; that the company as an optionee lacked capacity to apply for conditional use of the optioned property; and that the action taken by the board of appeals was arbitrary and capricious in a legal sense in that there was no substantial evidence to support the authorization of a conditional use.

As we see it, the first contention is the only one that must be considered on this appeal. For, even if it is assumed, without deciding, that the pipeline company is a common carrier and a public utility, it is clear to us that the tank farm or delivery facilities are not such "public utility structures" as may be erected or installed in an agricultural district under the county zoning ordinance.

Under the ordinance, the county is divided into districts ranging from A-1 (agricultural) districts to M-2 (general industrial) districts.[1] Among those principal uses which are permitted in an agricultural district by § 7.0111 of Article 7 of the ordinance are "electric, communication, water, sewer, gas, and

---

1. The several districts listed in § 5.00 of Article 5 of the ordinance are:
   "A-1"—Agricultural District
   "R-1"—Suburban Residence District
   "R-2"—Urban Residence District
   "R-3"—Multi-Family Residence District
   "B-1"—Neighborhood Business District
   "B-2"—Community Business District
   "B-3"—General Business District
   "M-1"—Light Industrial District
   "M-2"—General Industrial District.

fuel lines and necessary equipment incident thereto; but not administration, construction, maintenance, *storage* [italics ours] or sewage disposal facilities." Listed as a *conditional* use,[2] requiring board of appeals authorization, § 7.027 permits "public utility structures and properties" in an A-1 or agricultural district. But "petroleum or petroleum products refining or *storage above ground* [italics ours]," are allowed by § 15.02 as a restricted conditional use only in an M-2 or general industrial district. We also note (though we express no opinion as to the meaning of the clause) that "public utility yards for construction, maintenance or *storage* [italics ours]" are permitted in an M-1 (light industrial) district by § 14.0112 of Article 14 when located more than two hundred feet from any "R" district.

The pipeline company, relying on *Cassidy v. Baltimore County Board of Appeals,* 218 Md. 418, 146 A. 2d 896 (1958), contends that the facilities to be constructed on the Berry farm are "public utility structures" and therefore permissible as a conditional use in an agricultural district. We think not. That case is clearly distinguishable from this. It is true that in *Cassidy* we affirmed the granting of a special exception to a public utility company for the construction and operation of a steam generating plant and related facilities in a residential zone. There, the zoning regulations, in express terms, authorized the granting of special exceptions in R.6 zones for "public utility uses" other than those (such as telephone and telegraph lines and electric light and power lines) permitted in all residential zones without special exception. Here, however, the use of fuel line storage facilities are specifically prohibited as a permissive use in an agricultural district by § 7.0111, *supra,* and are not permitted in any other zoning district except an M-2 industrial district where aboveground storage of petroleum products is allowed by § 15.02, *supra,* on a restricted conditional basis. The zoning ordinance does not specify the type of buildings classifiable as "public utility structures," but whatever the

2. A conditional use is defined in § 4.11 of Article 4 as "a use which may be permitted in a district through the granting by the Board of Appeals of a Special Exception as defined in Article 66B, Annotated Code of Maryland, upon a finding by the Board that it meets specified conditions."

term was intended to embrace, it clearly does not include above-ground petroleum storage facilities, and we so hold.

Even though we assumed for the purposes of this case that the pipeline company is a common carrier, the location of a main pipeline, unlike the routes of railroad and motor carriers, is not regulated by the Interstate Commerce Commission. The same is true with respect to lateral pipelines. Nor was it necessary, according to the corporation secretary and staff attorney, for the company to consult any other source or authority, other than local regulations such as the county zoning ordinance, as to where the delivery facilities at a break-out point were to be located. In any event, even if the pipeline company was required to consult the I.C.C. as to the location of such facilities, the provisions of the zoning ordinance prohibiting the construction of aboveground storage facilities except in an M-2 industrial district do not contravene the power of Congress to regulate interstate commerce. Here we are concerned, not with the construction of underground main and lateral pipelines which will be installed in rights of way that were acquired for that purpose without giving any consideration to existing zoning regulations, but with the above ground construction of storage facilities which are prohibited in an agricultural district. The record shows that the pipeline company deliberately selected a site on the Berry farm, because it was more satisfactory to the company from overall hydraulic and economic standpoints, and applied for a conditional zoning use instead of seeking rezoning as was contemplated by the option agreement. It was also shown that an area of least twenty-five acres is required for the storage facilities; that there were several M-2 industrial districts in the vicinity, averaging approximately fifty acres in area, within one and one-fourth to two miles of the main pipeline and within a distance of one and one-half to eleven miles from the Berry farm site; and that there were also several M-1 industrial districts, averaging approximately one hundred acres in area, within one and one-half to four and one-half miles of the pipeline and within a distance of three and three-fourths to five miles from the Berry farm site. But the record is silent as to why such facilities could not practicably be placed in one of the relatively close M-2 districts,

where they are allowed upon compliance with minimal setback restrictions. Nor is there any explanation in the record as to why rezoning was not sought in one of the nearby M-1 districts or some other district. Under these circumstances, we find that the provisions of the zoning ordinance barring fuel line storage facilities from an argicultural district where they are specifically prohibited, do not constitute in this case an unreasonable and undue burden on or interference with interstate commerce. In this respect, we think the case at bar is clearly distinguishable on the facts from both *Transcontinental Gas Pipe Line Corp. v. Burough of Milltown,* 93 F. Supp. 287 (D.C. N.J. 1950), and *New York State Natural Gas Corp. v. Town of Elma,* 182 F. Supp. 1 (D.C. W.D. N.Y. 1960), cited by the appellee. In the last case it was said (at p. 6) that the commerce clause of the Constitution does not

> "operate to exempt interstate commerce from reasonable local zoning regulation. Only if it is established that a particular site is reasonably necessary for the proposed construction of equipment and buildings ancillary to an interstate pipe system should a local zoning ordinance forbidding such construction on that particular site be struck down. Such factors as the availability of alternative sites, the degree of harm on the local area which would result from the construction, and the comparative advantages of various sites in terms of efficiency and safety of operation bear on the question of *reasonable necessity.*"

See also *Panhandle Eastern Pipe Line Co. v. Public Service Comm.,* 332 U. S. 507 (1947). Cf. *Huron Portland Cement Co. v. City of Detroit,* 362 U. S. 440 (1960), where, in holding that a city smoke abatement ordinance as applied to interstate steam vessels did not constitute an undue burden on interstate commerce, it was said that the commerce clause does not prevent the lawful exercise of the police powers of a state even though it might indirectly affect interstate commerce.

The order of the lower court affirming the order of the board of appeals will be reversed but without prejudice to the pipe-

line company to seek rezoning.

*Order reversed; appellee to pay the costs.*