SMITH, ET AL. *v.* MILLER, ET AL.

[No. 160, September Term, 1967.]

*Decided April 2, 1968.*

The cause was argued before HORNEY, MARBURY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Cypert O. Whitfill,* with whom were *A. Freeborn Brown* and *T. Carroll Brown* on the brief, for appellants.

*J. Wilmer Cronin* and *Stanley Getz* for appellees.

SINGLEY, J., delivered the opinion of the Court.

When the Harford County land use map and zoning ordinance (the Ordinance) became effective on 5 December 1957, the appellee, Charles D. Miller, was operating a sawmill on land owned by Blue Ridge Flooring Company on Hughes Road in the county's fifth election district. As a consequence, the sawmill site was zoned M-2 (general industrial district).

In 1966, Blue Ridge Flooring determined to expand its operations, and gave Miller notice to move. Miller purchased a 33 acre tract of farmland on Smith Road, about 1¼ miles from the Blue Ridge Flooring site and on 14 March 1966 filed with the county's zoning inspector applications to erect a 30 ft. by 88 ft. building on the tract which he had purchased to house the sawmill and other machinery, to build a maintenance shop, to convert the first floor of an existing farm house into office space and to use the second floor as a watchman's apartment. The applications were disapproved on 14 March 1966, because the tract was zoned A-1 (agricultural district). On 16 March 1966 Miller requested that the applications be referred to the county's Board of Appeals (the Board) for consideration as applications for a conditional use under Ordinance § 7.025.[1]

None of the appellants were present at the hearing on 29 April 1966, but 3 days later, the appellant Smith wrote to the Board stating that he and the appellant Clare opposed the applications. On 9 May 1966, the Board directed that a permit for the sawmill and accessory uses be issued to Miller under § 7.025, conditioning the granting of the permit, however, upon an undertaking by Miller that: (1) none of his operations be closer than 300 ft. to Smith Road; (2) a separation of 200 ft. be observed "from any lot in an 'R' District or a lot occupied by a dwelling, school, church, etc."; and (3) "the operation remain substantially in accord with the plans and proposal presented to the Board * * *."

---

1. § 7.025 Processing of dairy products and farm products, riding stables, kennels for the raising, breeding, and boarding of dogs and other animals, provided that all buildings including runways shall comply with the requirements of sub-section 7.041.

On 8 June 1966, Smith and his wife, Clare and 3 other property owners and their wives, residents of the area, appealed from the Board's decision to the Circuit Court for Harford County. At the hearing, the appellees stipulated that one or more of the appellants had the standing required to maintain the appeal. The lower court considered the case on the record made before the Board and on 7 March 1967, affirmed the action of the Board. The present appeal was taken from this order.

The appellees urge us to affirm the lower court (and the Board's issuance of the permit) on the grounds that the action of the Board was neither arbitrary nor capricious, citing *City of Baltimore v. Sapero*, 230 Md. 291, 186 A. 2d 884 (1962); *Bosley v. Hospital*, 246 Md. 197, 227 A. 2d 746 (1967) and that the question before the Board was fairly debatable, citing *Agneslane, Inc. v. Lucas*, 247 Md. 612, 233 A. 2d 757 (1967).

We take a very different view, however. *Kenyon v. Board*, 235 Md. 388, 201 A. 2d 838 (1964) was an appeal from the same Board and involved the interpretation of the same ordinance. In *Kenyon*, the property owner attempted to extend a non-conforming use by seeking a permit to add 62% of floor area to his place of business. The Ordinance, § 20.462 authorizes the Board to permit an extension of such use not in excess of 35% of existing floor area. Faced with this limitation, the Board authorized the extension on the theory that it was a variance allowed by Ordinance § 20.47. We reversed the lower court and the Board, holding that the Board had acted beyond its power, and that the Board's action, in a legal sense, was arbitrary and capricious.

In the case before us, the Board chose to follow the *Kenyon* route. The Ordinance, § 15.012, includes among uses permitted in an M-2 district, a "Sawmill, the manufacture of excelsior, wood fiber or sawdust products," subject, however, to the proviso that it must not be located less than 300 feet from an R District (residential) or less than 100 feet from any other district except an M-1 District (light industrial). The structure of the Ordinance is the familiar one: the M-2 District, the least restrictive of the ten districts classified by the Act, is the first

district in which a sawmill is a permitted use.[2] A sawmill is specifically prohibited in an industrial park district, § 15.611, and prohibited by implication in an M-1 District (light industrial), where uses first permitted in M-2 are excluded by § 14.0113.

In an effort to help Mr. Miller relocate his mill, the Board found what it regarded as a solution. § 7.02 of the Ordinance contains a long list of conditional uses, which may be permitted by the Board in an agricultural district by granting a special exception under §§ 4.11 and 20.451 upon a finding by the Board that the use meets specified conditions. Typical of the conditional uses possible in an A-1 District, are sand and gravel pits; contagious disease hospitals; tourist camps, inns, swimming pools, fishing resorts; gun clubs; water tanks; penal institutions; airports; commercial hog and fur farms; garbage disposal; and, in § 7.025, the "Processing of dairy products and farm products, riding stables, kennels * * *." The logic adopted by the Board is simple: timber is a farm product; a sawmill processes it; therefore, Mr. Miller is entitled to build a sawmill in an agricultural district.

The testimony before the Board reveals the character of Mr. Miller's operation: a sawmill with a capacity of from 12,000 to 15,000 board feet a day, or from 3,120,000 to 3,650,000 board feet a year; a barker, to peel the logs; and a chipper to grind up the slabs for wood pulp. This can scarcely be regarded as consistent with the other conditional uses possible under § 7.02. To take any other view would open the county's agricultural district to any industrial development remotely connected with the processing of dairy and farm products without limitation as to size or source of raw material, and would make meaningless the provision of the Ordinance which attempts to confine saw-

---

2. Ordinance § 7.0110 includes among the uses permitted in an A-1 District (agricultural): "Sawmills for cutting timber grown primarily on the premises, provided that any such use shall be located not less than six hundred (600) feet from any dwelling not located on the same premises, school, church, or institution of human care." Neither the Board nor the court felt that Miller's operation came within this provision which, as was explained in argument, was intended to permit a farmer to set up a temporary mill to cut his own timber.

mills, flour and grain mills, grain drying and poultry feed manu-
facturing, meat packing, pickle, sauerkraut or sausage manu-
facturing, poultry slaughterhouses and vinegar manufacturing to
a general industrial district.

A substantially similar question was considered by this Court
in *St. Clair v. Colonial Pipeline*, 235 Md. 578, 202 A. 2d 376
(1964), which also arose under the Ordinance. A products pipe
line constructed by Colonial ran through Harford County. Co-
lonial proposed to construct above-ground storage facilities on
property in an agricultural district traversed by the line. The
pipe line was a permitted use under § 7.0111. Since the storage
of petroleum products above ground was a conditional use only
in an M-2, or general industrial district, Colonial relied on §
7.027 which permitted "public utility structures and properties"
as a conditional use in an agricultural district. The Board ac-
cepted this contention and issued the zoning certificate. The
Circuit Court for Harford County affirmed the action of the
Board. We reversed the order of affirmance. Judge Horney,
speaking for this Court, said, 235 Md. at 582-83:

> "Here, however, the use of fuel line storage facilities
> is specifically prohibited as a permissive use in an agri-
> cultural district by § 7.0111, *supra,* and is not per-
> mitted in any other zoning district except an M-2 in-
> dustrial district where aboveground storage of petro-
> leum products is allowed by § 15.02, *supra,* on a re-
> stricted conditional basis. The zoning ordinance does
> not specify the type of buildings classifiable as 'public
> utility structures,' but whatever the term was intended
> to embrace, it clearly does not include aboveground
> petroleum storage facilities, and we so hold."

Judge Marbury, speaking for the Court in *Kenyon v. Board,*
*supra,* after noting that the Board was precluded by the Ordi-
nance from treating the application as a non-conforming use,
said, 235 Md. at 394:

> "There is a separate section (Section 20.47) which
> authorizes the Board to grant variances, and upon
> which the appellee relies. However, we think the Board

exceeded its power in authorizing the variance, even though it attached to the variance four conditions which it thought would bring the addition within the standards which are set, found in Section 20.42 of the zoning ordinance, so that it would not adversely affect the public health, safety and welfare. The various powers of the Board enumerated in the ordinance must be read together, and we do not think the Board could do under the variance provision what it manifestly could not do under the nonconforming use section * * *."

We regard *Kenyon* as both apposite and controlling. The provisions of the Ordinance must be considered as an entirety, and we do not think the Board could rely on a conditional use provision to permit in an agricultural district a use which the Ordinance manifestly intended to confine to a general industrial district. It follows that the order of the court below affirming the order of the Board must be reversed because the action of the Board was in a legal sense arbitrary and capricious. *Kenyon v. Board, supra; Deen v. Balto. Gas & Electric Co.,* 240 Md. 317, 323-24, 214 A. 2d 146 (1965) ; *Montgomery County v. Merlands Club,* 202 Md. 279, 292-93, 96 A. 2d 261 (1953) ; *United States ex rel. Bayly v. Reckord,* 51 F. Supp. 507, 510 (D. Md. 1943). Since the principal use should not have been granted, the granting of the accessory uses must fail also.

*Order reversed; costs to be paid by appellee Charles D. Miller.*